1
2
3
4      **UNITED STATES DISTRICT COURT**
5      **DISTRICT OF NEVADA**
6
7    UNITED STATES OF AMERICA              )
                                           )        2:05-CR-0121-RCJ-RJJ
             Plaintiff,                    )
8                                          )
           vs.                             )        **ORDER**
9                                          )
     ROBERT DAVID KAHRE, *et al.*,         )
10                                         )
             Defendants.                   )
11    _____)
12
13           This matter comes before the Court on Defendant Joel Axberg's Objections to Magistrate

14    Judge Johnston's Order Regarding Motion for Recusal. (#1252.) Defendants Robert Kahre and

15    Lori Kahre filed Motions for Joinder to Defendant Axberg's Motion. (*See* #1279, #1295.) The

16    Court has considered the Motions, the pleadings on file, and oral argument on behalf of the

17    parties and hereby issues the following Order.

18                                        **BACKGROUND**

19           On May 2, 2006, Defendant Alexander Loglia filed his Motion for Evidentiary Hearing

20    and Notice of Possible Source of Judicial Bias and Prejudice. (#445.) Defendant Robert Kahre

21    filed his Motion for Recusal of Judge Johnston on May 5, 2006. (#454.) Defendant Loglia's

22    Motion called for an immediate evidentiary hearing to investigate alleged incidents

23    demonstrating Judge Johnston's improper actions with regard to the case at bar. Defendant

24    Kahre's Motion sought the immediate recusal of Judge Johnston. Judge Johnston then held an

25    evidentiary hearing on May 15, 2006. On April 30, 2007, Judge Johnston issued a written Order

1   denying both Defendant Loglia's and Defendant Kahre's Motions.  (#1209.)  Defendants now

2   object to Judge Johnston's Order and ask this Court to "issue an Order of Recusal regarding the

3   Magistrate Judge, the Honorable Robert J. Johnston."  (*See* #1252 at 11.)

### DISCUSSION

### I.    Defendants' Request for Recusal

6          In their Objections and Request for Recusal, Defendants proffer four main reasons why

7   this Court must order Judge Johnston's recusal: (1) the Magistrate Judge improperly presided

8   over the evidentiary hearing; (2) the Magistrate Judge conducted the evidentiary hearing in a

9   manner demonstrating improper bias; (3) the Magistrate Judge had knowledge of disputed facts;

10  and (4) the facts underlying the Magistrate Judge's participation in this case created an

11  appearance of impropriety.   For the reasons stated at oral argument, and for the additional

12  reasons stated herein, the Court denies Defendants' Objections and accompanying Request for

13  Recusal.

### A.    Standard for Recusal

15         A judge must "disqualify himself in any proceeding in which his impartiality might

16  reasonably be questioned." 28 U.S.C. § 455(a).  In addition, a judge must also disqualify himself

17  where he has "personal knowledge of disputed evidentiary facts concerning the proceeding . .

18  . ." *Id.* at § 455(b)(1).  Section 455 does not specify the procedures used and is self-enforcing

19  on the part of the judge.  As a federal judge is presumed to be impartial, a substantial burden is

20  imposed on the party claiming bias or prejudice to show that this is not the case.  *See, e.g.,*

21  *United States v. Zagari*, 419 F. Supp. 494, 506 n.30 (N.D. Cal. 1976).   A judge should recuse

22  himself when "a reasonable person with knowledge of all the facts would conclude that the

23  judge's impartiality might be reasonably questioned." *United States v. Hernandez,* 109 F.3d

24  1450, 1453 (1997).

25                          Page 2 of  8

### A.   Presiding Over the Evidentiary Hearing

First, Defendants argue that as a matter of law Judge Johnston was required to refer the evidentiary hearing to another judge.  Two federal statutes govern recusal: 28 U.S.C. § 144 and 28 U.S.C. § 455.  Defendants' Motions make clear that they relied on § 455 in arguing for Judge Johnston's recusal.  The cases to which Defendants cite in their Objections to support their argument that Judge Johnston erred in failing to refer the recusal matter to a different judge relate to § 144.  Section 144 includes a provision for assigning the motion to another judge for review only after the first judge determines that the motion is timely and that the affidavit is legally sufficient.  Section 455 has no such requirement.  Indeed, as noted above, § 455 "puts the judge under a *self-enforcing* obligation to recuse himself where legal grounds exist for disqualification."  *United States v. Jaramillo*, 745 F.2d 1245, 1248 (9th Cir. 1984) (emphasis added).  Under § 455(b)(1), a judge is required to disqualify himself if he has a personal bias or prejudice against a party.  For the reasons stated below, Defendants fail to establish the requisite showing of personal bias or prejudice, as well as the appearance of such.  Thus, as a matter of law, Judge Johnston was not required to refer the hearing to another judge.

### B.   Bias or Prejudice

As noted above, a judge must recuse himself due to personal bias or prejudice.  28 U.S.C. § 455(b)(1).  As a federal judge is presumed to be impartial, a substantial burden is imposed on the party claiming bias or prejudice to show that this is not the case.  *See, e.g., Zagari*, 419 F. Supp. at 506 n.30.  According to Defendants, Judge Johnston's bias or prejudice is "well documented and was further evidenced by the manner in which the evidentiary hearing was conducted."

First, Defendants argue that Judge Johnston acted "angrier and angrier" as the hearing progressed.  Thus, Defendants argue Judge Johnston was biased or prejudiced against

1   Defendants. (May 9, 2007, Hr'g Tr. at 15 [hereinafter Tr.].) In response to the Court's inquiry

2   regarding the subject of Judge Johnston's anger, counsel for Defendant Axberg said that Judge

3   Johnston was becoming angrier and angrier at "the whole subject matter; the entire subject

4   matter; the hearing." (*Id.* at 15:22-23.) Defendants also stated that Judge Johnston acted rudely

5   toward counsel for Defendant Robert Kahre in asking counsel "not to make that face at him."

6   (*Id.* at 18:12.)

7        While Judge Johnston may have become "angry" or irritated during the evidentiary

8   hearing, any such emotions were directed toward defense counsel's comments and arguments.

9   Nothing in the transcripts indicates that Judge Johnston was angry at the actual Defendants

10   themselves. For example, Judge Johnston ruled on several objections yet counsel continued to

11   disregard and argue over Judge Johnston's rulings. Moreover, counsel for Defendants refused

12   to answer some of Judge Johnston's questions. Any anger, lack of patience, or frustration was

13   clearly aimed at counsels' methodology, not at the individual Defendants. Personal bias or

14   prejudice, to require recusal or remand to a different judge, must be against the actual party, not

15   against the attorney or the attorney's methods. *See United States v. Burt*, 765 F.2d 1364, 1368

16   (9th Cir. 1985); *see also* 28 U.S.C. §§ 144, 455. Thus, Defendants' "anger" argument fails.

17        Second, Defendants claim that Judge Johnston's delay in issuing rulings and orders

18   evidences prejudice and bias against Defendants. While courts at times unfortunately

19   procrastinate or otherwise issue rulings in a less than timely manner, this fact alone is not

20   sufficient to establish bias or prejudice requiring recusal.

21        Third, Defendants argue that Judge Johnston's acquaintance, through his church, with

22   Government witness Don Herman evidences Judge Johnston's personal interest and bias in this

23   case. According to Defendants, "[t]he evidentiary hearing was nothing more than a forum for

24   the Magistrate Judge to exert his leadership role in the Church over the material witness at the

25                                      Page 4 of  8

hearing in order to solicit the testimony the Magistrate Judge wanted on the record." (#1252 at 7.) Mere membership in the same faith or church is not sufficient to justify recusal. *See In re Mccarthey*, 368 F.3d 1266, 1270 (10th Cir. 2004). Both Judge Johnston and Mr. Herman are members of the Church of Jesus Christ of Latter-day Saints (the "LDS" church). The LDS church is divided into geographical areas called "stakes." Each stake has roughly 5,000-8,000 members. Currently, there are twenty five stakes in the Las Vegas valley. Each stake is headed by a Stake Presidency consisting of a Stake President and two counselors. Each stake is further divided into smaller geographical units called wards. Each stake has roughly five to ten wards. While several wards might meet in the same meetinghouse, their meetings are held separately and generally without interaction. At the time of the evidentiary hearing at issue, Judge Johnston was a counselor in Mr. Herman's stake presidency, but of a different ward or congregation. As such he may meet periodically with members of the stake, including Mr. Herman, for ecclesiastical-type interviews or meetings. Thus, on infrequent occasion, Judge Johnston and Mr. Herman could have met or interacted in church settings. However, Defendants' mere allegation, without any proof here, that Judge Johnston used his leadership role in his church to influence Mr. Herman's testimony cannot provide basis for recusal. *See Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (refusing to disqualify a judge, who was LDS, when plaintiff challenged "the theocratic power structure of Utah").

Defendants further allege that Judge Johnston and Mr. Herman improperly discussed the case at bar in church settings. However, as analyzed below, Defendants fail to introduce evidence supporting this theory. For the reasons stated above and at oral argument, Defendants fail to establish bias or prejudice on the part of Judge Johnston. Contrary to Defendants' allegations, the Court has found that no conversations about the case occurred during an interview between Judge Johnston and Mr. Herman; and in fact, no such interview occurred at

the time alleged according to the documentation referenced in the transcript of hearing before Judge Johnston.  Rather, a mention of Mr. Kahre's name may have been raised only in passing, if at all, during brief encounter outside the church on that occasion.

**C.    Personal Knowledge or Interest**

Defendants also contend that Judge Johnston has personal interest and knowledge in this case requiring recusal.  Defendants point to two meetings between Judge Johnston and Mr. Herman as evidence of Judge Johnston's personal knowledge and interest.  The first meeting occurred after Defendant Robert Kahre's arraignment on May 20, 2005.  The second meeting occurred at a LDS church meetinghouse.  Defendants allege that Judge Johnston discussed this case with Mr. Herman at those meetings and asked Mr. Herman questions regarding Defendant David Kahre.  The only evidence Defendants proffer to support their argument is an affidavit submitted by Mr. Kahre wherein Defendant Kahre summarizes statements allegedly told to him by Mr. Herman.  According to this affidavit, Mr. Herman allegedly told Mr. Kahre that Judge Johnston had discussed the case with Mr. Herman.

The evidence in this case does not support Defendant Kahre's affidavit.  At the evidentiary hearing, Mr. Herman testified that the only discussion he ever had regarding Defendants with Judge Johnston took place in Judge Johnston's chambers when Judge Johnston invited Mr. Herman and his wife back to say hello.  On the day in question, Judge Johnston recognized Mr. Herman and his wife in the courtroom gallery.  As noted above, the Hermans and Judge Johnston were members of the same church or stake, but not of the same ward or congregation.  Accordingly, Judge Johnston invited them back to say hello.  During their conversation, Judge Johnston inquired as to why they were visiting his courtroom and if Mr. Herman knew Defendant Kahre.  According to Mr. Herman's testimony, other than that question regarding Mr. Kahre's identity, he and Judge Johnston never discussed Defendant Kahre or any

1   aspects of the case.  To constitute recusal, Defendants must show that Judge Johnston personally

2   knew the Defendants pre-indictment, knew some facts concerning the case from extrajudicial

3   sources, or had bias or prejudice against Defendants, whether stemming from extrajudicial or

4   judicially acquired sources.  Mr. Herman testified in direct contradiction to Defendant Kahre's

5   affidavit that he never discussed the case with Judge Johnston.  (*See* #508 at 31-93.)  Indeed, Mr.

6   Ray, another witness called to testify at the evidentiary hearing, confirmed Mr. Herman's

7   testimony.  Mr. Herman allegedly informed Defendant Kahre about the conversations he had

8   with Judge Johnston during a lunch meeting with Defendant Kahre and Mr. Ray.  Mr. Ray

9   testified that Mr. Herman never told them about any alleged meetings with Judge Johnston to

10  discuss the case.  (*See id.* at 102-118.)

11       Defendants have failed to demonstrate any evidence of personal knowledge or interest

12  on the part of Judge Johnston.  There is no showing of extrajudicial sources of knowledge.

13  Judge Johnston did not know Mr. Kahre before this case started.  The Court finds that other than

14  the simple inquiry as to whether Mr. Herman knew Defendant Kahre, Judge Johnston did not

15  have any conversations with Mr. Herman regarding the trial or Mr. Kahre.  The only evidence

16  to which Defendants cite is the hearsay containing affidavit provided by Mr. Kahre.  Defendants

17  admit they do not have any evidence other than these hearsay statements to support a finding of

18  Judge Johnston's alleged personal knowledge or interest in this case.  (*See* Tr. at 32:10-11.)  The

19  person who allegedly made the statements denied them in court under oath.  To the contrary,

20  more than one witness testified under oath at the evidentiary hearing that those conversations

21  never took place.  Judge Johnston simply had no knowledge about this case or the Defendants

22  prior to trial.  He had no particular animus toward Defendants or those involved in tax cases

23  generally.  Accordingly, for the reasons stated above and at oral argument, the Court finds that

24

25                                    Page 7 of  8

1    Defendants have failed to carry their burden in establishing Judge Johnston's personal

2    knowledge or interest in this case.

3    **D.      Appearance of Impropriety**

4           Defendants state that the appearance of impropriety is established by the fact that Judge

5    Johnston had personal knowledge of disputed facts.  (*See* #1252 at 10.)  However, as noted

6    above, a federal judge is presumed to be impartial, and therefore a substantial burden is imposed

7    on the party claiming bias or prejudice to show that this is not the case.  *See, e.g., United States*

8    *v. Zagari*, 419 F. Supp. 494, 506 n.30 (N.D. Cal. 1976).  For the reasons stated above,

9    Defendants have failed to carry this burden.

10                                    **CONCLUSION**

11          For the reasons stated above and at oral argument, Defendants have failed to carry

12   their burden to establish bias, prejudice, or personal knowledge with respect to Judge

13   Johnston.  Accordingly, IT IS HEREBY ORDERED that Defendants' Objections to

14   Magistrate Judge's Recusal Order and Request for Recusal (#1252) is *denied*.  IT IS

15   FURTHER ORDERED that Defendants' Motions for Joinder (#1279 and #1295) are

16   *granted*.

17          DATED:      July 13, 2007

18

19

20                                    _____
                                      ROBERT C. JONES
21                                    UNITED STATES DISTRICT JUDGE

22

23

24

25                              Page 8 of  8